**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ALEXANDER TUPAZ and**
**LOURDES TUPAZ,**

           **Plaintiffs,**

   v.                                                                                        05-CV-606

**CLINTON COUNTY, NEW YORK, and**
**JANET DUPREY, in her Individual Capacity**
**and in her Official Capacity as Clinton**
**County Treasurer,**

           **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I. INTRODUCTION**

Plaintiffs commenced the instant action pursuant to 42 U.S.C. § 1983 claiming that they have been deprived of their real property without due process of law in violation of the Fourteenth Amendment to the United States Constitution. Plaintiffs also contend that New York Real Property Tax Law §§ 1125 and 1131 are unconstitutional. After the Court dismissed the action on summary judgment, the United States Court of Appeals for the Second Circuit vacated the judgment and remanded for further proceedings. See Luessenhop v. Clinton County, 466 F.3d 259 (2d Cir. 2006). Presently before the Court are the parties' cross-motions for summary judgment.

1

## II.  BACKGROUND

Plaintiffs owned two adjacent vacant lots in Clinton County, New York.  On May 21, 2002, May 31, 2002, August 8, 2002, January 1, 2003, and February 11, 2003, Clinton County ("the County") sent letters to Plaintiffs advising them that back taxes remained due and owing and that foreclosure actions would be commenced if the taxes were not paid.  These letters were sent, via first-class mail, to 4675 Amboy Road, Staten Island, New York, the address listed on the County's tax rolls.   The letters were not returned as undeliverable, but the Tupazes did not respond.  Plaintiffs do not recall receiving these letters.

"On October 10, 2003, the County sent Notices and Petitions of Foreclosure to all delinquent taxpayers, including the Tupazes, via certified mail . . . .  These notices were intended to inform the Tupazes that the final date for redemption was January 16, 2004.  Again, the Tupazes did not respond, prompting the County to proceed with the foreclosure."  Luessenhop, 466 F.3d at 263.   In addition to the notices sent to Plaintiff's by certified mail, the County published notice regarding the foreclosure in two Clinton County newspapers once a week for three non-consecutive weeks.

> The parties dispute whether the Notice of Foreclosure sent by certified mail actually was received.  The County submitted a print-out from the United States Postal Service website confirming that the letter was delivered at 2:46 p.m. on October 16, 2003, and that a "line" was drawn through the signature section of the green certified mail receipt.  The Tupazes claim that it was impossible for anyone at the Staten Island residence to have accepted the County's letter on October 16, 2003:  the Tupazes were both working in Brooklyn that day and their adult son was away at Iona College in New Rochelle, NY.  They further point out that the "line" drawn through the signature box of the return receipt is evidence that no one received the item of certified mail.

Luessenhop, 466 F.3d at 263.

Regardless of the parties' dispute regarding actual receipt of the October 10, 2003 Notice and Petition sent via certified mail, there is no genuine dispute as to Defendants' belief as to whether the Notice and Petition were delivered. In this regard, Defendant Janet Duprey, Clinton County Treasurer, submitted an affidavit attesting as follows:

> 11. In mid-October, 2003, the green certified mailing receipt attached to the Tupaz mailing was returned to my office with a mark in the signature line indicating that it had been delivered and received on October 16, 2003.
>
> 12.  Pursuant to standard office procedure, when the receipt was returned, my staff would verify that it was indeed signed. When the Tupaz receipt was returned to my office, a staff member noted the line in the signature box and brought it to my attention. Based on my review of the receipt and the plaintiffs' history of non-payment, I determined that there was no reason to believe that it was not indeed received and acknowledged.
>
> 13. On that same day or shortly thereafter, we used the U.S. Post Office on-line "Track and Receive" service and verified it had been delivered and received on October 16th at 2:46 p.m. We rely upon the U.S. Post Office to deliver our mailings and assume that they actually deliver the mail we provide them. We have not had any prior problems with the Post Office that would cause me to suspect that they were not actually delivering the plaintiffs' mail.
>
> 14. In my experience, it is not at all unusual to receive a certified mail receipt with an illegible signature or simply a mark in the signature box indicating its receipt. I have found that often people simply mark a certified mail receipt, rather than signing it, and recall occasions when a receipt would have some unusual mark, and the recipient would later pay their taxes. When we receive just a detached receipt, rather than the entire envelope back, we assume that the mailing has indeed been delivered and received.

Duprey Aff. ¶¶ 11-14.

Although Plaintiffs proffer arguments in an attempt to raise questions of fact as to what Clinton County and Janet Duprey knew or should have known regarding delivery of the certified mailing, the arguments are not supported by the record. For instance,

3

Plaintiffs claim that Defendants were notified by the U. S. Post Office that the Notice sent by certified mail might not have been delivered. There is no evidence of this. Rather, Defendants received a marked certified mail receipt, and confirmation of delivery was provided by the U.S. Post Office's on-line "Track and Confirm" service. Defs.' Exs. J, K. Also, contrary to Plaintiffs' contention that the word "signature" was crossed out on the certified mail receipt card, the word is not crossed out on the certified mail receipt card. See Defs' Ex. S. In contrast to Plaintiffs' claim that Defendants received notice from the U.S. Post Office in April 2004 that the certified mailing was not delivered, the cited letter does not support this contention. Pls.' Ex. H. Rather, the cited letter provides in pertinent part: "The delivery record shows that this item was delivered on 10/16/2003 at 2:46 PM in Staten Island, NY 10312. There is no delivery signature on file for this item." Id. The lack of a delivery signature on file with the U.S. Post Office does not negate the fact that the confirmation of delivery card was returned to Clinton County. Defs.' Ex. S.

There is no dispute that Plaintiffs did not contact the County prior to the redemption deadline to inquire into the status of a foreclosure proceeding or to pay their back taxes. As a result, on February 20, 2004, a default judgment was entered transferring title of Plaintiffs' properties to Clinton County. Def. Local Rule 7.1(a)(3) Stat. of Mat. Facts Not in Dispute ("Def. L. R. 7.1(a)(3) Stat.") ¶ 15. On or about March 31, 2004, Alexander Tupaz called the Clinton County Treasurer's office regarding the 2004 taxes. Tupaz was informed that title had passed to the County.

Thereafter, Plaintiffs moved in state court to vacate the foreclosure and set aside the default judgment. Plaintiffs' motion was denied on the grounds that: (1) Plaintiffs were properly served with notice of foreclosure; (2) Plaintiffs failed to timely pay their taxes; and

(3) their motion to reopen the default was late. Id. ¶ 17. In addition, the state court "concluded that the County had properly served the plaintiffs at their correct address by certified mail and that no other additional return receipt was required." Id. This decision was affirmed on appeal. See In re Foreclosure of Tax Liens by County of Clinton, 17 A.D.3d 914, 793 N.Y.S.2d 596 (3d Dep't 2005). This action followed.

On Defendants' original motion for summary judgment, the Court held that: (1) the Tax Injunction Act, 28 U.S.C. § 1341, and the related principle of comity, deprived the Court of subject matter jurisdiction over the action; and (2) alternatively and assuming that the Court had subject matter jurisdiction over the matter, Plaintiffs were afforded all the process they were due. Accordingly, the Court granted summary judgment to Defendants and dismissed the action. Plaintiffs appealed.

On appeal, the United States Court of Appeals for the Second Circuit determined that (1) the Tax Injunction Act and the doctrine of comity did not divest the Court of subject matter jurisdiction, and (2) in light of the subsequently decided case of Jones v. Flowers, 547 U.S. 220, 126 S. Ct. 1708, 164 L. Ed.2d 415 (2006), questions existed as to whether Plaintiffs were in fact afforded all the process they were due. See Luessenhop, 466 F.3d at 268, 271-72. The Second Circuit vacated the judgment and remanded the matter for further consideration in light of Jones. Id. at 272. Presently before the Court are the parties' cross-motions for summary judgment.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

5

56(c). When considering cross-motions for summary judgment, a court "'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002)(quoting Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, Inc., 996 F.2d at 1461.

## IV. DISCUSSION

### a. Due Process - Adequate Notice

In Jones v. Flowers, the Supreme Court resolved the "conflict among the Circuits and State Supreme Courts concerning whether the Due Process Clause requires the government to take additional reasonable steps to notify a property owner when notice of a tax sale is returned undelivered." Jones, 126 S. Ct. at 1713. In that case, Jones, a property owner, was delinquent in paying his property taxes. Id. at 1712-13. The Arkansas Commissioner of State Lands ("Commissioner") determined to sell Jones' property in accordance with state law and, in an effort to notify Jones of the intended sale, sent by certified mail to Jones two notices of the sale. Id. at 1712-18. Both mailings were returned to the Commissioner marked "unclaimed." Id. The Commissioner took no additional steps to notify Jones of the sale, and the property was sold to a third party. Id. Jones subsequently commenced a civil action asserting that the sale violated his right to

6

due process because the notice provided by the Commissioner was constitutionally inadequate. Id.  The Supreme Court agreed. Id.

The Jones Court reasoned that, in light of the fact that the two certified mailings were returned and marked undelivered, the Commissioner knew or should have know that Jones did not receive notice of the sale. Jones, 126 S.Ct. at 1718.  The Court held that, in such circumstances, the Due Process Clause required the Commissioner to take additional reasonable measures in an attempt to notify Jones of the sale. Id.

It is important to note, however, that Jones did not hold that due process requires actual notice. See Jones, 126 S. Ct. at 1713 ("Due process does not require that a property owner receive actual notice before the government may take his property.")(citing Dusenbery v. United States, 534 U.S. 161, 170, 122 S. Ct. 694, 151 L. Ed.2d 597 (2002)). Rather, Jones requires that a state or municipality make reasonable efforts to notify a landowner when it receives "new information" that the landowner had not received the sale notice sent to the address on file with the state or municipality. Id. at 1718.  "What steps are reasonable in response to new information depends upon what the new information reveals.  The return of the certified letter marked 'unclaimed' meant either that Jones still lived at 717 North Bryan Street, but was not home when the postman called and did not retrieve the letter at the post office, or that Jones no longer resided at that address." Id.

> In Jones' case, the Court explained that there were at least two possible
> steps the Commissioner could have pursued. . . . First, the government could
> have (and should have) sent the notice by regular mail. [Jones, 126 S.Ct. at
> 1718 -19];  see also [Harner v. County of Tioga, 5 N.Y.3d 136, 138, 800
> N.Y.S.2d 112, 113, 833 N.E.2d 255 (2005) ]("[D]ue process was satisfied in
> this case where the notices of foreclosure sent by certified mail ... were
> returned 'unclaimed,' but the ordinary mailings were not, and the County took
> no steps to obtain an alternative address.").  Second, the Commissioner
> could have posted a notice on the front door of Jones' property. Jones, 126

7

S.Ct. at 1719

Luessenhop, 466 F.3d at 269-70.

The Commissioner was not required, however, to "search the Little Rock phonebook and other government records such as income tax rolls" for Jones' address because there was no evidence that he had moved and because state law required the land owner to keep his address up to date with the taxing authorities. See Jones, 126 S.Ct. at 1719 ("An open-ended search for a new address-especially when the State obligates the taxpayer to keep his address updated with the tax collector, . . . imposes burdens on the State significantly greater than the several relatively easy options outlined above."). Further, the Supreme Court noted that "if there were no reasonable additional steps . . . [the state] cannot be faulted for doing nothing." Jones, 126 S.Ct. at 1718.

In applying Jones to the instant case, the Second Circuit wrote:

> First, it is far from clear, under Jones, what weight should be given to [the Tupazes'] receipt of the first-class letters. It is at least arguable that if (i) the Tupazes did not receive the notice (sent by certified mail) informing them that the government was about to take their property, (ii) the government was aware that the letter was not received, and (iii) the government took no additional steps where it was practicable to do so, then the notice fails under Jones. It will be for the district court, in the first instance, to determine whether Jones suggests that the government's failure to act is excused because prior letters presumably had reached their desired destination.
>
> Second, the question that Jones tells us to ask is whether the County *thought* that the Tupazes had received notice. The record indicates that the County received conflicting information regarding the Tupazes' receipt of the notice: the postal service confirmed delivery, but there was no signature on the return receipt. The district court, having rendered decision prior to Jones, did not frame the question in this manner. It does appear that the court determined that the Tupazes must have received the letter, pointing out that "a certified letter that has been confirmed by the postal service to have been delivered to plaintiffs' proper address passes constitutional muster." But the court never made a specific finding regarding whether the County thought

> the Tupazes received the letter. This is a subtle but important distinction. Moreover, the question whether the County thought that the Tupazes had received the item of certified mail is a disputed question of fact, and each side should be permitted to marshal its evidence on this issue.

Luessenhop, 466 F.3d at 271-72 (emphasis in the original).

Both questions posed by the Second Circuit must be answered in Defendants' favor. There is no evidence presented from which a reasonable fact finder could conclude that Defendants had any reason to believe that the Plaintiffs did not receive all of the mailings it sent - including the certified mailing. The letters sent by first class regular mail were not returned, and the receipt for the certified mail was returned indicating that the Notice had been delivered. To the extent that the "line" drawn on the certified mail receipt raised some suspicion of non-delivery and, hence, created an additional obligation on the County's part, the County fulfilled this obligation by accessing the U.S. Post Office's on-line "Track and Receive" service and verifying that the certified mail had been delivered and received on October 16th at 2:46 p.m.

The questions raised by Plaintiffs as to the actual delivery of the certified mailing do not undermine Defendants' belief at the time the County extinguished the Tupazes' interest in the property that the certified letter had been properly delivered. See Jones, 126 S. Ct. at 1715 (The court must "evaluate the adequacy of notice prior to the State extinguishing a property owner's interest in a home."); id. at 1717 ("It is certainly true . . . that the failure of notice in a specific case does not establish the inadequacy of the attempted notice; in that sense, the constitutionality of a particular procedure for notice is assessed *ex ante,* rather than *post hoc.*"). Simply put, assuming that the certified letter had not been improperly delivered, there is no evidence that Duprey or anyone at Clinton

9

County was aware of any facts before the final date of redemption that Plaintiffs did not receive adequate notice. Given the uncontroverted evidence in this regard, and given that the Clinton County did make additional efforts to determine that the Notice had been delivered, the Court finds no due process violation. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' due process claim premised on an alleged lack of notice.

### b. Constitutionality of N.Y.R.P.T.L. § 1125

In their Third Claim for Relief, Plaintiffs seek a declaration that New York Real Property Law § 1125 "violates the Fifth and Fourteenth Amendments"[1] because it requires notice of foreclosure to be served by certified mail but does not "require a signed certified mail receipt from the property owner as part of [the] certified mailing." Compl. ¶ 53. Defendants argue that by delivering the foreclosure notice by certified mail to Plaintiffs' address on file with the County, the County has satisfied both statutory and constitutional due process notice requirements. The Court agrees.

New York Real Property Tax Law § 1125 requires only certified mailing, not return of a signed certified mail receipt from the property owner. See N. Y. R. P. T. L. § 1125. "[D]ue process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Jones, 126 S. Ct. at 1714 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L.Ed.

---

[1] "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" Dusenbery v. United States, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002). Since the United States is not a party to this action, the Fifth Amendment's Due Process Clause has no application in this case.

865 (1950)). A certified mailing sent to the address that the landowner gives to the municipality is sufficient to satisfy due process. Id. at 1713-14, 1714 ("It is true that this Court has deemed notice constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent."); Dusenbery v. United States, 534 U.S. 161, 170, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002)(certified mail sent to a known address satisfies due process); see also Akey v. Clinton County, N.Y., 375 F.3d 231, 235 (2d Cir. 2004) ("As notice by mail is deemed to be reasonably calculated to reach property owners, the state is not required to go further, despite the slight risk that notice sent by ordinary mail might not be received."); Weigner v. City of New York, 852 F.2d 646, 650 (2d Cir. 1988)("In the context of a wide variety of proceedings that threaten to deprive individuals of their property interests, the Supreme Court has consistently held that mailed notice satisfies the requirements of due process." )(citing cases). Therefore, Defendants are granted summary judgment dismissing Plaintiffs' Third Claim for Relief.

### b. Constitutionality of N.Y.R.P.T.L. § 1131

In their Fourth Claim for Relief, Plaintiffs contend that New York Real Property Tax Law § 1131 is unconstitutional because (1) the statute requires "that a motion to vacate a default judgment of tax foreclosure be made within 30 days of the entry of default judgment," Compl. ¶ 54; (2) "New York courts have construed this section to mean that Defendants did not have to serve the default judgment upon Plaintiffs to start the 30 day period to vacate," id. at ¶ 55; and (3) "Plaintiffs had no notice of the foreclosure action or the foreclosure judgment. The statue is unconstitutional to the extent that Plaintiffs are not allowed to vacate the default judgment even though they had no notice of it, have a

11

meritorious defense, and want to file their answer." Id. at ¶ 56.   Plaintiffs expand upon their argument in their Memorandum of Law, asserting:

> Plaintiffs agree with Defendants that the Real Property Tax Law does *not* mandate service of the default judgment of tax foreclosure. In Weigner, the Second Circuit held that default judgment did not have to be served *because* the owner was served with the notice of foreclosure. However, when an owner is not served with the notice of foreclosure and then is not served with the default judgment, they have *no* notice of the 30-day period to move to vacate the default judgment. RPTL § 1131 states that a motion to vacate must be made within 30 days after *entry* of the default judgment.
>
> It violates due process under [the] Fifth Amendment to deprive a person of their property without any notice.  If a county does not serve the notice of foreclosure, it *must* serve the default judgment. Otherwise, the owner is deprived of an opportunity to vacate the default judgment for good cause (including lack of notice or payment of the back taxes).

Pls. Mem. L. pp. 18-19 (footnote omitted, emphasis in original).

An identical argument was asserted by Plaintiffs' counsel in another case against Clinton County.  See Zachary v. Clinton County, N.Y., 2003 WL 24197685, at * 4 - * 6 (N.D.N.Y. Jan. 10, 2003)(Scullin, C.J.), aff'd  86 Fed. Appx. 451, 2004 WL 133865 (2d Cir. Jan. 21, 2004)("[W]e find no error in the actions of the district court and affirm for substantially the reasons given in its thorough opinion.").  Then-Chief Judge Scullin rejected the argument, writing:

> With respect to the issue of whether the County had to serve the default judgment on Plaintiffs to satisfy due process, Weigner, as Plaintiffs acknowledge, controls and, under that case, due process does not require the County to serve the default judgment on Plaintiffs as long as the notice of the commencement of the foreclosure action is sufficient. Since the Court has already concluded that the notice Plaintiffs received was sufficient, Plaintiffs' argument that Weigner does not apply because the notice they received was insufficient to satisfy due process must fail.

Zachary, 2003 WL 24197685, at  * 6.

Inasmuch as this Court has concluded that Plaintiffs received sufficient notice of the

12

foreclosure, the Court rejects Plaintiffs' argument for the same reasons set forth by Judge Scullin in Zachary. Id.; see Weigner, 852 F.2d at 652 ("[D]ue process only requires notice of the pendency of the action and an opportunity to respond" and does not require municipalities "to send additional notices as each step in the foreclosure proceedings [is] completed. . . ." )(quotation marks and citations omitted).  Accordingly, Defendants are granted summary judgment dismissing Plaintiffs' Fourth Claim for Relief.

### c.  Redemption After Deadline - Due Process and Equal Protection

Plaintiffs also contend that the County violated their constitutional rights to due process and equal protection because it did not permit them to redeem their property after the property had been foreclosed upon.  Pl. Mem. L. p. 15 ( "Both due process and equal protection require a reasonable time for reconveyance of property to the owner after a default judgment of tax foreclosure is entered against them.").   Both arguments are without merit.

As explained above, the courts have held that in tax foreclosure cases due process requires that the delinquent taxpayer be afforded adequate notice of the pendency of the foreclosure proceedings and an opportunity to present their objections. See Jones, 126 S. Ct. at 1714;  Weigner, 852 F.2d at 652.   Plaintiffs were provided constitutionally adequate notice of the pendency of the proceedings and the opportunity to present their objections. Once default judgment was entered, Plaintiffs' interest in the property was extinguished. See Miner v. Clinton County, N.Y., 06-CV-728 (N.D.N.Y.), Trans. of April 12, 2007 Proceedings, p. 19 [dkt. # 28 ] ("Here, the Miners tried to redeem after [the redemption

period] had passed, however they had already lost their rights to the property.").[2]  They had no further due process right to redeem their property after that point. Id.  Simply put, Plaintiffs were provided all of the process they were due.  Jones, 126 S. Ct. at 1714; Weigner, 852 F.2d at 652.

Plaintiffs' equal protection argument is equally unavailing. The Equal Protection Clause "is basically a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985); see  Nielson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005)("The Equal Protection Clause of the Fourteenth Amendment requires that the government treat similarly situated persons alike.")(citations omitted).  In order to prevail on an equal protection claim, Plaintiffs must establish that (1) they were treated differently than other similarly situated taxpayers, and (2) this differential treatment was motivated by an intent to discriminate on the basis of race, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000). Although Plaintiffs cite to the practices in other municipalities that allow delinquent taxpayers to redeem their property after the redemption period or after entry of default judgment, a county is not required to permit redemption after the expiration of the redemption period. See N. Y. R. P. T. L. § 1131; Zachary, 2003 WL 24197685, at  * 4. Further and more importantly, Plaintiffs are unable to cite to any delinquent taxpayers in Clinton County that were treated differently than they were with regard to the right of

---

[2] In Miner v. Clinton County, N.Y., 06-CV-726 (N.D.N.Y.), the Hon. Gary L. Sharpe, U.S.D.J., rejected an identical argument brought by Plaintiffs' counsel representing different clients against Clinton County.  See Trans. of April 12, 2007 Proceedings, pp. 18-20.

14

redemption after entry of default judgment.  Thus, their equal protection claim fails as a matter of law. See Miner, 4/12/07 Trans. pp. 18-19 (finding plaintiffs' equal protection claim meritless because plaintiffs "do [not] claim that they were treated differently from other delinquent taxpayers in Clinton County.").  The claim is dismissed.

### d.  Right to Surplus Monies

Finally,  Plaintiffs assert that the County is violating their "due process and equal protection rights under the Constitution by depriving them of the right to recoup any surplus obtained over the amount of delinquent taxes, interest, and penalties." Pls. Mem. L. p. 19.  Defendants contend that the claim is not ripe for adjudication because Plaintiffs' property has not yet been sold and, if the claim is ripe, it is without merit.   The Court agrees with Defendants.

Assuming *arguendo* that the issue is ripe for adjudication, see Friends of Earth, Inc. v. Laidlaw Environmental Servs., Inc., 528 U.S. 167, 185-86 (2000)(an actual case or controversy may exist under Article III where there is an imminent risk of injury), it is without merit. See Zachary, 2003 WL 24197685, at  * 6 (dismissing an identical claim). "[I]n [Nelson v. City of N.Y., 352 U.S. 103 (1956)], the Supreme Court held that 'nothing in the Federal Constitution prevents [the City from foreclosing on real property and, in the absence of timely action to redeem or to recover any surplus, retaining the property or the entire proceeds of its sale] where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings.'" Zachary, 2003 WL 24197685, at * 6 (quoting  Nelson, 352 U.S. at 109).   There is no legitimate reason not to apply Nelson applies to the facts of this case.  Accordingly, Plaintiffs' claim for surplus

15

monies is dismissed.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is **GRANTED**, and the Plaintiffs' cross-motion for summary judgment is **DENIED**. The action is **DISMISSED** in its entirety.

**IT IS SO ORDERED**

DATED:  June 7, 2007

Thomas J. McAvoy
Senior, U.S. District Judge